**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| United States of America, | |
| v. | Case No. 22-cr-00163-SVN-2 |
| Lyell Champagne, Jr. | |
| Defendant. | October 19, 2022 |

**ORDER**

The Court held a hearing today to determine whether to revoke Defendant's bond based on the Government's Motion to Revoke Bond. For the reasons that follow, the Government's Motion to Revoke Bond is GRANTED. (Doc. # 44, 49.)

To recite the relevant history in this case, on August 4, 2022, Mr. Champagne was charged by indictment with conspiracy to commit bank fraud, conspiracy and aggravated identity. Mr. Champagne appeared before the undersigned on August 22, 2022, for his initial presentment and a detention hearing was held. While the Court released Mr. Champagne pending trial, to address concerns that Mr. Champagne would use electronic devices in furtherance of crimes, the Court ordered and Mr. Champagne agreed to monitoring of his electronic devices by Probation. Mr. Champagne would reside with his parents in Missouri where he would be supervised by the Northern District of Missouri.

On October 11, 2022, Probation filed a Status Report highlighting, among other things, concerns that Defendant had engaged in substantial monetary transactions while on supervision, which was revealed to Probation through their electronic monitoring of Defendant. Probation observed that Defendant had accessed a Bank of America account that had not been disclosed to

Probation and made several transfers each in the amount of $300,000 from August 25, 2022 to September 1, 2022. The status report also noted that Defendant had unapproved/unreported electronic devices at his home and unapproved items such as ammunition, a gun bag, holster, pepper spray, and handcuffs.

On October 12, 2022, the Court held a hearing via Zoom to address the concerns in the status report. At the hearing, the Government orally moved for revocation of bond (Doc. #44), based on alleged fraudulent activities related to a multi-million dollar tax refund received by Defendant, which in the Government's view formed the basis to believe Defendant was engaging in money laundering and bank fraud. At the hearing, Probation Officer Stephens supervising Mr. Champagne in the Northern District of Missouri, shared that to explain the large transfers of money, Mr. Champagne filled out fraud reports with Bank of America. Officer Stephens explained that Mr. Champagne's claim that the transfers were fraudulent was not credible given that there were messages between Mr. Champagne and another individual Ms. Samuels regarding the transfers. In addition, Officer Stephens shared that Mr. Champagne was asked at least twice to disclose all his bank accounts, and had failed to disclose the account that was the subject of the large transfers and had also failed to disclose email accounts that he had access to. The matter was taken under advisement.

Following that hearing, the Court scheduled an in-person bond hearing, and invited all parties to file briefs in support of their respective positions, in favor or against detention. On October 19, 2022, the bond hearing was held in person. Both the Government and the Defendant filed briefs supporting their positions.

Applying the standard set forth in 18 U.S.C. § 3148, as stated on the record, the Court finds that:

(1) there is probable cause to believe that Defendant has violated federal law while on release. 18 U.S.C. § 3148(b)(1)(A).

(2) based on the factors set forth in § 3142(g) there is no condition or combination of conditions of release that will assure that Defendant will not pose a danger to the safety of any other person or the community. 18 U.S.C. § 3148(b)(2)(A).

(3) the Defendant is unlikely to abide by any conditions or combination of conditions of release. 18 U.S.C. § 3148(b)(2)(B).

As to 18 U.S.C. § 3148(b)(1)(A), the Government has provided uncontroverted evidence through the Affidavit of Special Agent Joshua Young that while on release Mr. Champagne executed six transactions in the amount of $300,000 which money the Government persuasively demonstrates derived from a fraudulent tax return check received by Mr. Champagne in the amount of $3,449,395, while being investigated by the FBI for other fraudulent conduct. The evidence submitted by the Government established probable cause to believe that Defendant engaged in money laundering through the outgoing transfers of proceeds of money obtained through fraudulent tax returns.

As to 18 U.S.C. §§ 3148(b)(2)(A) and (B), although not necessary, the Court finds that both statutory criteria are met. The Government has presented evidence of ongoing and repeated efforts by the Defendant, while it was known to him that he was under investigation for the current charges, to continue his schemes of fraud on a grand scale. While on supervision, Defendant concealed to Probation the existence of key bank accounts and email accounts, despite Defendant's obligation to provide the information to Probation as part of his processing and multiple requests for the information. There appears to be a cell phone account through Consumer Cellular that Mr. Champagne did not disclose to Probation. The Government and Probation have presented evidence that while on supervision, Defendant, despite his knowledge that he was being monitored by

Probation, brazenly executed the financial transfers and then lied to Probation when asked the activity, under the guise that the transactions were fraudulent, even though the surveillance and text messages to the recipient of the transfers demonstrate otherwise. The lack of candor and outright lies to Probation have led Probation to maintain that Mr. Champagne is unsupervisable and the Court agrees. Furthermore, evidence of Mr. Champagne's manipulations in writing a letter using unauthorized letterhead to falsely vouch that his girlfriend had completed community service, a driver's license obtained by the government showing a photo of Mr. Champagne with another person's name, and evidence of violent antisemitic rhetoric, all paint a picture of an individual with history and characteristics that dictate against release.

The Defendant proposed a set of stringent conditions of release, including home confinement, termination of internet access in the home and on Mr. Champagne's phone, and consenting to unrestricted searched of the home. However, Mr. Champagne's conduct pre and post indictment, demonstrate that whatever loophole there is, he will find it. Based on the record before these Court, these conditions do not satisfy the Court that the community will be protected from further harm of fraud or similar financial crimes. Therefore, based on Defendant's conduct, the Court finds that there are no conditions that could assure the safety of the community, and that there is no basis to believe that Defendant would abide by any such conditions, however restrictive.

As a result, the Court is left with no choice but to order revocation and detention and remand Defendant into custody. SO ORDERED.

*/s/ Maria E. Garcia*
Hon. Maria E. Garcia
United States Magistrate Judge